United States District Court
Southern District of Texas
**ENTERED**
April 11, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Universal Plant Services., Inc., § | | |
| Plaintiff, § | | |
| § | | |
| v. § | Civil Action H-22-2364 | |
| § | | |
| David Meier, et al., § | | |
| Defendants. § | | |

### ORDER

In their January 30, 2023 Letter, ECF No. 133, the parties ask the court to decide whether proposed Paragraph 9.C should be included in the Protective Order governing the exchange of discovery in this case. The court concludes that it should.

### *1. Background*

Under Paragraph 9 of the current Protective Order, ECF No. 19, materials designated as "Attorney's Eyes Only" (AEO) may not be disclosed to any of the individual Defendants or to the representatives of the party receiving the materials unless the representative or individual Defendant authored or previously received the AEO material. ECF No. 19 at 4 (¶ 9.d.). The parties have agreed to amend the Protective Order to add Paragraph 9.A., which will provide the individual Defendants and a designated representative of both Universal Plant Services (UPS) and Precision Machinery Contractors (PMC) the right to access AEO materials in the presence of their counsel. Paragraph 9.A. also provides several other safeguards to protect the confidential

and proprietary nature of the information, such as prohibitions on receiving copies or taking photos of the materials. *See* ECF No. 133 at 7 (proposed, agreed Paragraph 9.A.). The parties also agree to add Paragraph 9.B., which is an exception to Paragraph 9.A. for "AEO Financial Materials." Under Paragraph 9.B., AEO Financial Materials may not be disclosed to any individual Defendant or the corporate Defendants' representatives without the consent of the other side. *See* ECF No. 133 at 8.

The parties disagree about whether proposed Paragraph 9.C. should be added to the Protective Order. UPS wants to add Paragraph 9.C.; Defendants do not. Proposed Paragraph 9.C. would be a second exception to Paragraph 9.A. for "AEO Recent Bid Material." ECF No. 133 at 8. Under proposed Paragraph 9.C., "Material produced by the parties that relate[s] to bids submitted on or after July 1, 2022 ('AEO Recent Bid Material') may *not* be disclosed or made available by the receiving party to anyone other than [the people listed in Paragraph 9]." *Id.* (emphasis in original).

Of concern to Defendants is that proposed Paragraph 9.C. would prevent the individual Defendants and PMC's representative designated under Paragraph 9.A. from seeing bid materials generated by UPS after July 1, 2022. It is undisputed that no Defendant would have had access to any of UPS's AEO Recent Bid Materials because no Defendant worked at UPS after July 1, 2022.

UPS seeks to protect the AEO Recent Bid Materials from disclosure to any of PMC's current employees, and specifically

2

those former UPS employees—now Defendants, that UPS accuses of misappropriating UPS's trade secrets. According to UPS, the materials at issue constitute "the most secret information regarding UPS's business – pricing and structure of competitive bids." ECF No. 133 at 3.

PMC argues it needs its company's president, Defendant David Meier, to have access to the AEO Recent Bid Materials for three reasons: (1) to determine whether UPS and PMC have bid against each other on the same projects after July 1, 2022; (2) to identify differences and similarities between UPS's bids and PMC's bids; and (3) to identify any other "industry-specific, nuanced information" that may impact UPS's claims and request for damages. *Id.* at 3. According to defense counsel, neither they nor their experts possess the specific experience or knowledge to understand, without Meier's assistance, the contents of the AEO Recent Bid Materials and that preventing Meier from reviewing the documents would substantially prejudice their ability to mount a defense.

The court held a lengthy hearing and endeavored to find a compromise. Several things came to light at the hearing. There is no dispute that the materials UPS seeks to protect are either trade secrets or, at a minimum, confidential business information. The parties are direct competitors for the same projects. ECF No. 138 at 4. Meier's role at PMC includes formulating the bids on the projects for which it competes with UPS. *Id.* at 6–7. PMC rejects any suggestion that Meier be precluded from bidding on future projects if he were given access

3

to the materials at issue. *Id.* at 7–8. PMC is seeking to have Meier thoroughly analyze the AEO Recent Bid Materials, not only to determine whether they pertain to a project on which both sides submitted a bid, but also to understand the details of how UPS formulates its bids.[1] *Id.* at 9. With respect to the last point, UPS changed its methodology for formulating its bids after July 1, 2022. ECF No. 138 at 17. Thus, allowing Meier access to the AEO Recent Bid Materials would allow him access to bids created in a way he has never seen. That access would not be limited to a cursory review but would involve a full analysis and deconstruction of UPS's new bidding methodology. Finally, there is apparently no way to redact the documents to allow Meier to adequately review them while protecting UPS's information. *Id.* at 8.

### 2. Analysis

Federal Rule of Civil Procedure 26(c)(1)(G) permits the court, on a showing of good cause, to enter a protective order "requiring that a trade secret or other confidential . . . commercial information not be revealed or be revealed only in a specified way." Contrary to defense counsel's assertion at the hearing that the protection UPS seeks here is unheard of, ECF No. 138 at 7, preventing disclosure of confidential information to

---

[1] The court asked defense counsel whether "[Meier] really does need to dig into the nitty-gritty of the documents," to which defense counsel responded "Absolutely." ECF No. 138 at 9. At another point in the hearing, defense counsel agreed that Meier would not be engaging in a cursory review of the documents but would instead be undertaking a detailed analysis of the documents to "see how it is that [UPS] went about their business in [the] bid so that [he] could then compare and contrast [the bid] to the way that [PMC does their] bids and tell [the] lawyers why they're not the same thing." *Id.* at 24.

4

competitors is commonplace. *Blanchard & Co. v. Barrick Gold Corp.*, No. 02-3721, 2004 WL 737485, at *8 (E.D. La. April 5, 2004) (noting that "ample precedent exists" for limiting disclosure of highly sensitive, confidential information to outside attorneys and experts; citing the Manual for Complex Litigation for the proposition that disclosure of information with commercial value may be limited to those not involved in the relevant corporate activity or only to outside attorneys and experts).

The burden is on the party seeking the protective order to show good cause. *Kline v. Neilsen & Hiebert Sys., Inc.*, No. 12-1412, 2013 WL 12182140, at *3 (W.D. La. May 15, 2013). There is no serious dispute that the AEO Recent Bid Information is, at a minimum, confidential commercial information that should be protected from disclosure. It appears to be precisely the sort of information that UPS claims to be trade secrets and that Defendants allegedly misappropriated. The parties have already agreed that a protective order should be in place but now disagree as to its scope. The court finds good cause exists to protect the AEO Recent Bid Information. The only question is whether Meier should have access to it.

When determining whether a certain person or category of people should be denied access to confidential information, courts employ a five-factor test. The court should consider (1) whether the person receiving the confidential information is involved in competitive decision making related to the subject matter at issue; (2) the risk of inadvertent disclosure of proprietary information; (3) the hardship imposed by the restriction; (4) the

timing of the remedy; and (5) the scope of the remedy. *Adams & Assoc., LLC, v. Dell, Inc.*, No. 1:05-CV-64 TS, 2006 WL 4523602, at *3 (D. Utah June 12, 2006); *Nearstar, Inc. v. Waggoner*, No. 4:09-CV-218, 2009 WL 10677780, at *3 (E.D. Tex. Dec. 10, 2009) (employing the five factors to determine whether to deny a party, as opposed to the party's counsel, access to confidential information).

- ***Competitive Decision Making***

Here, Meier is PMC's president and plays a key role in formulating and submitting bids in direct competition with UPS. There can be no serious argument that Meier is not involved in competitive decision making. This factor weighs in favor of including Paragraph 9.C.

- ***Inadvertent Disclosure***

Defendants argue that Meier's review of UPS's bids would not pose any risk that he might retain and inadvertently disclose the information he learned. The court disagrees. PMC seeks to have Meier engage in a thorough and exhaustive analysis and deconstruction of UPS's bids. While he might not be able to remember a particular cost or margin, he would be learning the methodology underlying the bid. He will not likely be able to put that information out of his mind when submitting the next bid in competition with UPS. At a minimum there is a risk that he might inadvertently use UPS's information in direct competition with UPS. Again, Defendants refuse to remove Meier from the bidding process. This factor weighs in favor of including Paragraph 9.C.

6

- *Hardship*

There is a hardship on Defendants if Meier cannot review the documents. He is apparently in the best position to understand the information and defense counsel is apparently not able to understand the bids without Meier's assistance.

To some extent this hardship is self-imposed, however. PMC is not willing to remove Meier from the bidding process, which could have been a sensible solution. PMC refuses to bar Meier from bidding activities because he is essential to PMC's business and taking him out of his bid creation role would hinder PMC's ability to conduct its business at all.

There are also other solutions that could mitigate the hardship on PMC. For example, PMC may depose a person at UPS with knowledge of the AEO Recent Bid Materials so that defense counsel and PMC's outside experts can decipher the materials. In fact, because UPS's bid methodology has changed since Meier was involved, a deposition might be the only way to approach the problem. Additionally, Meier can work with the outside experts and educate them about the bidding process he employed while at UPS so that the experts can better understand the AEO Recent Bid Materials. In any event, because these solutions would involve extra costs to PMC, this factor weighs against including Paragraph 9.C. in the Protective Order.

- *Timing of the Remedy*

With respect to the timing of the remedy, the discovery deadline is now October 16, 2023. There is plenty of time for PMC

7

to adjust to the modified protective order, and there is no reason to delay the modification.

- ### *Scope of the Remedy*

The scope of the remedy proposed is appropriate. Proposed Paragraph 9.C. pertains only to those bid-related materials created after any Defendant was employed at UPS. Again, UPS modified its bid structure after it discovered what it believes to have been Defendants' misappropriation of its trade secrets. Allowing Meier to access and study what UPS believes are new trade secrets would be particularly damaging. Thus, carving out the narrow segment of information that proposed Paragraph 9.C. contemplates is appropriate.

Balancing these factors, the court concludes that Proposed Paragraph 9.C. should be included in the Protective Order.

The court notes that cases PMC cites in support of excluding proposed Paragraph 9.C. do not undermine the court's conclusion. For example, in *Adams* the court allowed the plaintiff to have access to the information at issue. But that was because, among other things, (1) the plaintiff was not a competitor with the defendant, 2006 WL 4523602, at *4, and (2) access was conditioned upon the plaintiff being barred from filing new patent applications related to the subject matter of the litigation for a period of one year after the termination of the litigation, *id.* at *9. In connection with the patent prosecution bar, the court noted that "[m]aking access conditional allow[s] [a] plaintiff to make the choice between "(a) access subject to conditions and (b) freedom from conditions, by no access." *Id.* at *6.

*Standard Space Platforms Corp v. United States*, 35 Fed. Cl. 505 (1996), is similar. In their submission to the court, Defendants have highlighted a few isolated statements from the case. For example: "Indeed, to deny plaintiff the right to have its own president assist in its litigation, given defendant's flimsy showing, could well border on a denial of due process." ECF No. 144 at 19 (highlighting *Standard Space Platforms*, 35 Fed. Cl. at 509). The undersigned read the whole case, however. Facts matter. Plaintiff's president and CEO sought to have access to confidential information. But he was no longer actively involved with the plaintiff corporation, was then engaged in the business of selling insurance, and had no plans for inventing any technology related to the subject matter of the suit. *Id.* 508–09 (finding that "there may well be *less risk* [of misuse of the confidential information] because, by all appearances [the plaintiff's president] is no longer active in the aerospace field and simply sells insurance" (emphasis in original)).

*Standard Space Platforms* supports the idea that a non-competitor having no plans to engage in any business related to the litigation may be permitted access to confidential materials to assist the party in litigation. It does not support the idea that a current competitor-defendant with specific and imminent plans to compete directly with the plaintiff in connection with the very business that is the subject of the confidential materials may have access to those materials.

Here, Meier is PMC's active president. He intends to continue his work in direct competition with UPS. His work

9

specifically relates to formulating bids, which is the subject matter of this lawsuit and is the subject matter of the AEO Recent Bid Materials. On balance, allowing him access to those materials would risk great injury to UPS, and there are ways that PMC can ameliorate the harm it claims it will suffer if Meier is not allowed to see the documents.

### 3. Conclusion

Paragraph 9.C. shall be included in the Protective Order, which the parties shall submit to the court by April 14, 2023, for entry on the docket.

Signed at Houston, Texas, on April 11, 2023.

*Peter Bray*

Peter Bray
United States Magistrate Judge