United States District Court
Southern District of Texas

**ENTERED**

May 27, 2026

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNIVERSAL PLANT SERVICES, INC., INC., NOW KNOWN AS UNIVERSAL PLANT SERVICES, LLC, and JONES INDUSTRIAL HOLDINGS, INC., | § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-22-2364 |
| DAVID MEIER; MARCUS KEENAN; JEFF WESTER; GREG ADAMS; ERIC MONROE; MELINDA BARRY; PRECISION MACHINERY CONTRACTORS, LLC; CARL ALAN SWINDOLL; KELLY LYNN CLARK; ALS ASSOCIATES, INC.; PRECISION INVESTMENT GROUP, LLC; TIGER MANAGEMENT GROUP, LLC; and TURNAROUND SERVICES, LLC, | § § § § § § § § § § § § § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the court are Defendants' Memorandum of Law for Jury Trial (Docket Entry No. 301), in which Defendants assert that the Texas Uniform Trade Secrets Act ("TUTSA") preempts most of Plaintiffs' common-law tort theories, and Plaintiffs' Motion for Clarification of the Court's February 11, 2026 Minute Entry Order Excluding Head Start Advantage Damages Evidence (Plaintiffs' Motion for Clarification") (Docket Entry No. 307), in which Plaintiffs move the court to "vacate the portion of Docket Entry No. 304 excluding head start advantage damages evidence and permit [them]

to present such evidence at trial."[1]  Also pending before the court are Plaintiffs' Response to Defendants' Preemption Arguments in Defendants' Memorandum of Law for Jury Trial ("Plaintiffs' Response to Preemption Arguments") (Docket Entry No. 310), Defendants' Reply Brief Regarding TUTSA Preemption (Docket Entry No. 316), Defendants' Response to Plaintiffs' Motion for Clarification (Docket Entry No. 315), and Plaintiffs' Reply in Support of Motion for Clarification of the Court's February 11, 2026 Minute Entry Order Excluding Head Start Advantage Damages Evidence ("Plaintiffs' Reply in Support of Motion for Clarification") (Docket Entry No. 317).  For the reasons stated below, the court concludes that TUTSA preempts Plaintiffs' state law tort claims for breach of fiduciary duty, knowing participation in breach of fiduciary duty, tortious interference with contract, and civil conspiracy to the extent that those claims are premised on alleged misappropriation of Plaintiffs' confidential information, the court amends the February 11, 2026, Hearing Minutes and Order to reflect that Plaintiffs may not present expert testimony in support of the claim for head start advantage damages, and denies without prejudice the request for an order permitting Plaintiffs to elicit testimony on head start advantage damages from their executives.

---

[1]Plaintiffs' Motion for Clarification, Docket Entry No. 307, p. 6.  See also Id. at 17 ("Plaintiffs respectfully request that the Court grant this Motion for Clarification, vacate the portion of the February 11, 2026, Minute Entry Order (Docket Entry No. 304) excluding head start advantage damages evidence, and enter an order permitted Plaintiffs to present such evidence at trial.").  Page numbers for docket entries refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

## I. __Factual and Procedural Background__

### A.    __Factual Background__

Plaintiff, Universal Plant Services, Inc., now known as Universal Plant Services, LLC and Jones Industrial Holdings, Inc. ("Plaintiffs" or "UPS"), is an industrial services company. Plaintiffs allege that Defendants, Alan Swindoll, Kelly Clark, ALS Associates, Inc. ("ALS"), Turnaround Services, LLC ("Turnaround"), Tiger Management Group, LLC ("Tiger") Precision Machinery Contractors, LLC ("PMC"), Precision Investment Group, LLC ("Precision"), and former UPS employees Greg Adams, Melinda Barry, Marcus Keenan, David Meier, Eric Monroe, and Jeff Wester, conspired to misappropriate Plaintiffs' confidential information, trade secrets, and property to form and operate PMC, a direct competitor offering similar services to the same customers in the same geographic markets.

### B.    __Procedural Background__

This action was initiated on July 15, 2022, against PMC and former UPS employees Adams, Barry, Keenan, Meier, Monroe, and Wester for their involvement in the creation of PMC and misappropriation of confidential information and trade secrets (Docket Entry No. 1). On November 3, 2023, the court entered a Memorandum Opinion and Order (Docket Entry No. 179) granting Plaintiff's Motion for Leave to File Third Amended Complaint and

adding six defendants: Clark, Swindoll, ALS, Precision, Tiger, and Turnaround. Plaintiff's Third Amended Complaint (Docket Entry No. 180) asserts violations of the federal Defend Trade Secrets Act, TUTSA, and the Texas Theft Liability Act, as well as common law claims under Texas law, for breach of contract, breach of fiduciary duty, knowing participation in breach of fiduciary duty, tortious interference with a contract, conversion, and civil conspiracy.

On February 2, 2026, Defendants submitted their Memorandum of Law for Jury Trial arguing, <u>inter alia</u>, that "TUTSA preempts most of [Plaintiffs'] common-law tort theories."[2]  At Docket Call held on February 11, 2026, the court ordered the parties to submit additional briefing on the TUTSA preemption issue.[3]  Plaintiffs have since agreed to dismiss claims premised on misappropriation of trade secrets,[4] but argue that other tort claims are not preempted.[5] Pursuant to the parties' stipulations,[6] the court has dismissed (1) claims for breach of fiduciary duty premised on misappropriation of trade secrets asserted against Adams, Barry,

---

[2]Defendants' Memorandum of Law for Jury Trial, Docket Entry No. 301, p. 16.

[3]Hearing Minutes and Order, Docket Entry No. 304, p. 2.

[4]<u>See</u> Plaintiffs' Federal Rule of Civil Procedure 41(a)(2) Motion of Voluntary Dismissal of Certain Caims Without Prejudice, Docket Entry No. 311.

[5]Plaintiffs' Response to Preemption Arguments, Docket Entry No. 310, p. 7.

[6]<u>See</u> Joint Rule 41(a)(1)(A)(ii) Stipulation of Partial Dismissal of Claims (Docket Entry No. 312).

Keenan, Meier, Monroe, and Wester; (2) claims for conversion asserted against Adams, Barry, Keenan, Meier, Monroe, Wester, and PMC; and (3) claims for civil conspiracy asserted against Adams, Barry, Keenan, Meier, Monroe, Wester, and PMC.[7]

## II. **TUTSA Preemption**

Asserting that the gravamen of most of Plaintiffs' tort claims is the alleged misappropriation of trade secrets, Defendants argue that TUTSA preempts most of Plaintiffs' claims for breach of fiduciary duty and knowing participation in breach of fiduciary duty, Plaintiffs' claims for tortious interference with contract, most of Plaintiffs' claims for conversion, and Plaintiffs' claims for civil conspiracy.[8]   Plaintiffs do not dispute that TUTSA preempts their claims for breach of fiduciary duty, participation in breach of fiduciary duty, conversion, and civil conspiracy to the extent that they are premised on alleged misappropriation of trade secrets,[9] and those claims have all been dismissed by agreement of the parties.[10]   However, citing Trinseo Europe GmbH v.

---

[7]Partial Order of Dismissal of Certain Claims, Docket Entry No. 314.

[8]Defendants' Memorandum of Law for Jury Trial, Docket Entry No. 301, pp. 16-22.

[9]Plaintiffs' Response to Preemption Arguments, Docket Entry No. 310, pp. 7-12 (failing to dispute Defendants' contention that its claims for conversion are all preempted).

[10]See Joint Rule 41(a)(1)(A)(ii) Stipulation of Partial
(continued...)

Kellogg Brown & Root, L.L.C., et al., 165 F.4th 399, 422 (5th Cir. 2026), Plaintiffs argue that the tort claims that have not been voluntarily dismissed are not preempted because they "are not based on the same alleged conduct as the TUTSA claim[s]."[11]  Defendants urge the court to hold that the tort claims premised on misappropriation of Plaintiffs' confidential information are also preempted.[12]  Defendants explain that

> [a]llowing UPS to submit common law tort theories based on information UPS itself contends is a trade secret is a recipe for jury confusion.  For the common law tort claims, the jury would have to be instructed to consider only information that it finds is confidential but not a trade secret.  Furthermore, UPS has no damage theory based on misappropriation of non-trade secret confidential information.  Its entire damage theory is built on the premise that the information at issue constitutes trade secrets.  This is reflected in the report of UPS's damages expert, [Walter] Bratic.  See Report at ECF No. 244-1.[13]

## A.   Applicable Law

TUTSA governs claims for trade secret misappropriation in Texas.  Tex. Civ. Prac. & Rem. Code §§ 134A.001 et seq.  TUTSA

---

[10](...continued)
Dismissal of Claims, Docket Entry No. 312, p. 2 (seeking to strike ¶¶ 143-47 of the Complaint), and Partial Order of Dismissal of Certain Claims, Docket Entry No. 314, p. 2 (dismissing Plaintiff's conversion claims).

[11]Plaintiffs' Response to Preemption Arguments, Docket Entry No. 310, p. 7.

[12]Defendants' Memorandum of Law for Jury Trial, Docket Entry No. 301, pp. 17-18.

[13]Id. at 18.

defines "misappropriation" as:

    (A)   acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

    (B)   disclosure or use of a trade secret of another without express or implied consent by a person who:

        (i)   used improper means to acquire knowledge of the trade secret;

        (ii)   at the time of disclosure or use, knew or had reason to know that the person's knowledge of the trade secret was:

            (a)   derived from or through a person who used improper means to acquire the trade secret;

            (b)   acquired under circumstances giving rise to a duty to maintain the secrecy of or limit the use of the trade secret; or

            (c)   derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of or limit the use of the trade secret; . . .

Tex. Civ. Prac. & Rem. Code §§ 134A.002(3).  See <u>Trinseo</u>, 165 F.4th at 421 ("TUTSA preempts claims premised on misappropriation of a trade secret.").

TUTSA defines "trade secret" to mean "all forms and types of information" that the owner "has taken reasonable measures . . . to keep . . . secret," and which "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information."  Tex. Civ. Prac. & Rem. Code § 134A.002(6).

TUTSA's preemption provision states that

(a)  [e]xcept as provided by Subsection (b), this chapter displaces conflicting tort, restitionary, and other law of this state providing civil remedies for misappropriation of a trade secret.

(b)  This chapter does not affect:

(1)  contractual remedies, whether or not based upon misappropriation of a trade secret;

(2)  other civil remedies that are not based upon misappropriation of a trade secret; or

(3)  criminal remedies, whether or not based upon misappropriation of a trade secret.

Tex. Civ. Prac. & Rem. Code § 134A.007.  Observing that "Texas intermediate courts have consistently held that a common law claim is preempted by TUTSA when the gravamen of the claim duplicates a TUTSA claim," Trinseo, 165 F.4th at 421, the Fifth Circuit held that "TUTSA 'preempts claims that rely on the same facts as a trade-secret-misappropriation claim.'" Id. at 422 (quoting Coe v. DNOW LP, 718 S.W.3d 338, 353 (Tex. App. — Houston [14th Dist.] 2025, pet. denied)).  The Fifth Circuit explained that

[i]n determining whether a claim is preempted, Texas courts look to "the substance of the facts alleged rather than to the way a claim is pleaded."  [Coe, 718 S.W.3d at] 355.  For instance, even where a claim is premised on "confidential information" rather than trade secrets, that claim is preempted if "as pleaded" by the plaintiffs, "the confidential and proprietary information at issue . . . falls within TUTSA's definition of a trade secret."

Trinseo, 165 F.4th at 422.  See Coe, 718 S.W.3d at 353 ("if proof of some other theory of liability would also prove misappropriation of a trade secret, then the claim is preempted.").

8

**B.   Application of the Law to the Facts**

1.   <u>Plaintiffs' Claims for Breach of Fiduciary Duty are Preempted to the Extent They are Premised on Alleged Misappropriation of Plaintiffs' Confidential Information</u>

Asserting that Plaintiffs' claims for breach of fiduciary duty against its former employees, Adams, Barry, Keenan, Meier, Monroe, and Wester, fall into one of two categories: (1) misappropriation of confidential information and trade secrets; and (2) other conduct, <u>e.g.</u>, misappropriation of tangible property, diversion of UPS customers, failure to perform work obligations, and beginning employment with PMC before ending employment with UPS, Defendants argue that "[t]he first category is clearly preempted by TUTSA."[14] "Defendants do not contend that the second category of other conduct is preempted by TUTSA."[15]

Plaintiffs argue that their "confidential information is entirely separate from [its] trade secrets. Specifically, the documents at issue are not the same and the claims address distinct factual allegations supported by distinct specific factual evidence and expert testimony."[16] Plaintiffs explain that

> the instant matter is distinguishable from <u>Trinseo</u>, because the claims at issue, as UPS's pleadings and the record before the court establishes, were not pled "in the 'alternative' and based [] entirely on information

---

[14]<u>Id.</u> at 19.  <u>See also</u> Defendants' Reply Brief Regarding TUTSA Preemption, Docket Entry No. 316, pp. 5-6.

[15]Defendants' Reply Brief Regarding TUTSA Preemption, Docket Entry No. 316, p. 5.

[16]Plaintiffs' Response to Preemption Arguments, Docket Entry No. 310, p. 8.

that [Plaintiffs] alleged constituted a trade secret." <u>Trinseo</u>, 165 F.4th at 422. In fact, Plaintiffs' Third Amended Complaint explicitly defines "Confidential Information" and "Trade Secrets" separately and does not allege any claim in the alternative (<u>See</u> Docket Entry No. 180 at p. 2 fns. 1, 2). . . . As such, these claims are not preempted by TUTSA as a matter of law.[17]

Plaintiffs argue that this case is distinguishable from <u>Trinseo</u> because their claims for misappropriation of confidential information and misappropriation of trade secrets are not based entirely on information that they allege constitute trade secrets, but review of Plaintiffs' pleadings and the report of their expert, Bratic, persuade the court that both Plaintiffs' claims for misappropriation of confidential information and trade secrets are, in fact, premised entirely on information that Plaintiffs allege constitute trade secrets.

In an attempt to distinguish their confidential information from their trade secrets, Plaintiffs refer the court to notes 1 and 2 in their Third Amended Complaint. Note 1 says that

> "Confidential Information" shall mean, per the Non-Disclosure Agreements executed by each of the Individual Defendants, any data, materials, products, tooling, technological data, computer programs, specifications, manuals, business plans, client performance, labor relation, marketing plans, client lists, financial information, billing rates, pending projects, outage workbooks, proposals, and other information obtained from [UPS] or other information which relates to past, present, or future business activities of [UPS] or its customers.[18]

---

[17]<u>Id.</u> at 8-9.

[18]Plaintiff's Third Amended Complaint, Docket Entry No. 180, p. 2 n.1.

In pertinent part note 2 says that

> "Trade Secrets" shall mean: (1) all forms and types of [UPS] information . . .; (2) UPS business information and business methodologies; (3) categories to include UPS business information, methodologies, and customer lists: billing rates, customer lists, financial data, pricing, and service strategies; and (4) the aggregation of the categories of UPS's confidential information that includes business information, methodologies, and customer lists: proposals, contracts, purchase orders, and customer contracts.[19]

Because Plaintiffs' definition of "confidential information" expressly includes "information which relates to past, present, or future business activities of [UPS] or its customers,"[20] and because Plaintiffs' definition of "trade secrets" expressly includes "all forms and types of [UPS] information," and "the aggregation of the categories of UPS's confidential information that includes business information," Plaintiffs' definition of their "trade secrets" subsumes their "confidential information." This conclusion finds support in  the report of Plaintiffs' expert, Bratic.  The first sentence of Bratic's damages analysis states that he was "asked to assume that the UPS Trade Secrets and Confidential Information are, in fact, trade secrets."[21]

---

[19]Id. n. 2.

[20]Id. n.1.

[21]Amended Bratic Report, Docket Entry No. 244-1, p. 18 ¶ 38.

11

Despite Plaintiffs' assertion that their "confidential information is entirely separate from [their] trade secrets,"[22] neither Plaintiffs' pleadings nor Plaintiffs' briefing discuss how their allegedly misappropriated "confidential information" is to be distinguished from their allegedly misappropriated "trade secrets." The court concludes, therefore, that as pled, Plaintiffs' claims for misappropriation of confidential information and trade secrets are based entirely on information that Plaintiffs allege constitute "trade secrets." Plaintiffs' claims for breach of fiduciary duty based an the alleged misappropriation of confidential information asserted against former employees, Adams, Barry, Keenan, Meier, Monroe, and Wester, are therefore preempted by TUTSA because "TUTSA preempts claims that rely on the same facts as a trade-secret-misappropriation claim." Trinseo, 165 F.4th at 422.

2.    Plaintiffs' Claims for Knowing Participation in Breach of Fiduciary Duty are Preempted to the Extent that They are Premised on Alleged Misappropriation of Plaintiffs' Confidential Information

Defendants argue that Plaintiffs' claims for knowing participation in breach of fiduciary duty are preempted by TUTSA to the extent that they are based on alleged participation in misappropriation of trade secrets for the same reasons that

---

[22]Plaintiffs' Response to Preemption Arguments, Docket Entry No. 310, p. 8.

Plaintiffs' claims for breach of fiduciary duty are preempted.[23] Plaintiffs respond that because they have asserted claims for breach of fiduciary duty that "are not based on the misappropriation of trade secrets, no part of the claims for knowing participation in a breach of fiduciary duty is preempted."[24]

Plaintiffs' claims for knowing participation in breach of fiduciary duty are asserted against four defendants: ALS, Precision PMC, and Tiger.[25]  In pertinent part Plaintiffs allege that

> [t]he Individual Defendants breached fiduciary duties to UPS, including by disclosing UPS's Confidential Information and Trade Secrets to PMC, accepting offers of employment at PMC before leaving UPS, and assisting in the diversion of customers from UPS to PMC.[26]

"Knowing participation in breach of fiduciary duty is a derivative claim, requiring an underlying breach of fiduciary duty, in which the defendant knowingly participates." Dockside Marine, L.L.C. v. Walker, No. 09-23-00047-CV, 2024 WL 3220404, at *8 (Tex. App.—Beaumont June 27, 2024, no pet.) (quoting Straehla v. AL Global Services, LLC, 619 S.W.3d 795, 804 (Tex. App.—San Antonio 2020, pet. denied)).  Because the court has already concluded that

---

[23]Defendants' Memorandum of Law for Jury Trial, Docket Entry No. 301, p. 19.  See also Defendants' Reply Brief Regarding TUTSA Preemption, Docket Entry No. 316, pp. 6-7.

[24]Plaintiffs' Response to Preemption Arguments, Docket Entry No. 310, p. 10.

[25]Plaintiff's Third Amended Complaint, Docket Entry No. 180, p. 32.

[26]Id. at ¶ 115.

13

Plaintiffs' claims for breach of fiduciary duty based an the alleged misappropriation of confidential information asserted against former employees, Adams, Barry, Keenan, Meier, Monroe, and Wester, are preempted, Plaintiff's claims for knowing participation in those alleged breaches of fiduciary duty are also preempted.

   3.   <u>Plaintiffs' Claims for Tortious Interference with Contract are Preempted</u>

Citing ¶¶ 121-22 of Plaintiff's Third Amended Complaint, Defendants argue that Plaintiffs' claims for tortious interference with contract are preempted because they are expressly based on allegations that defendants ALS, Precision, PMC, and Tiger participated in the misappropriation of Plaintiffs' trade secrets.[27] These paragraphs of the Complaint allege:

> 121. ALS, PMC, Precision, and Tiger are willfully and intentionally interfering with the UPS Confidentiality/Non-Disclosure Agreements by employing Adams, Barry, Keenan, Meier, Monroe, Rivera, Villalpando, and Wester in positions in which they are disclosing and will continue to disclose and/or use UPS's Confidential Information, Trade Secrets, or property.

> 122. ALS, PMC, Precision, and Tiger are willfully and intentionally interfering with the UPS Confidentiality/Non-Disclosure Agreements by using UPS's Confidential Information, Trade Secrets, or property to unlawfully compete with UPS. The fundamental basis of the creation of PMC, which includes ALS, Precision, and Tiger, is to use UPS's

---

[27]Defendants' Memorandum of Law for Jury Trial, Docket Entry No. 301, p. 20. <u>See also</u> Defendants' Reply Brief Regarding TUTSA Preemption, Docket Entry No. 316, pp. 7-8.

Confidential Information, Trade Secrets, and property to directly compete with UPS in the marketplace.[28]

Citing Texas Civil Practice and Remedies Code § 134A.007(b)(1), Plaintiffs respond that

[i]n this case, [their] claim is that ALS, PMC, Precision, and Tiger intentionally interfered with the UPS/Confidentiality/Non-Disclosure Agreements. As the initial proposed unified jury charge demonstrates, the underlying claims and the damages associated with those claims arise solely from those contracts. TUTSA cannot preempt [its] claims for tortious interference with contract . . . as a matter of law because [those claims] sounds only in contract.[29]

Quoting S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA, 315 F.3d 533, 538 (5th Cir. 2003), Plaintiffs argue that "in Texas, 'if damages arise solely from the loss of the contract benefit, the claim sounds only in contract.'"[30]

Section 134A.006(b)(1) of the Texas Civil Practices and Remedies Code states that "[t]his chapter does not affect . . . contractual remedies, whether or not based upon misappropriation of a trade secret." Plaintiffs' reliance on S&W Enterprises, 315 F.3d at 538, to argue that their claims for tortious interference are not preempted by TUTSA is misplaced because TUTSA preemption was not at issue in that case. At issue was whether a party's refusal

---

[28]Plaintiff's Third Amended Complaint, Docket Entry No. 180, p. 33.

[29]Plaintiffs' Response to Preemption Arguments, Docket Entry No. 310, p. 11.

[30]Id.

15

to consent to assignment of a contract could be an "independent tort." Id. at 537.  Citing Texas cases on the economic loss rule, which provides that a party to a contract cannot pursue a tort claim for loss of the benefit of the contract, the Fifth Circuit held that refusal to consent to assignment of a contract could not be an independent tort.  Id.  Although the basic measure of damages for tortious interference with an existing contract may be the same as the measure of damages for breach of the contract interfered with in order to put the plaintiff in the same economic position it would have been in had the contract been performed, see American National Petroleum Co. v. Transcontinental Gas Pipe Line Corp., 798 S.W.2d 274, 278 (Tex. 1990), the "majority position in Texas courts appears to be that tortious interference with contract is not a contractual remedy and that the TUTSA can therefore preempt such claims."  El Paso Disposal, LP v. Ecube Labs Co., 766 F. Supp. 3d 692, 721 (W.D. Tex. 2025) (collecting cases). The rationale for the majority position is that Texas "courts generally view tortious interference with contract under Texas common law as a 'tort claim requiring the existence of a contract as an element,' as opposed to as a 'claim in contract' itself."  Id. (quoting Avenu Insights & Analytics, LLC v. Azavar Government Solutions, Inc., No. 6:18-cv-00422-JDK-KNM, 2023 WL 3035363, at *4 (E.D. Tex. February 24, 2023)).  See also Wilkerson v. University of North Texas By and Through Board of Regents, 878 F.3d 147, 162 (5th Cir. 2017)

16

("tortious interference (as its name suggests) is a tort"). Because Plaintiffs have failed to cite any case holding that a tortious interference claim is a contract claim for purposes of TUTSA preemption, the court is not persuaded that § 134A.006(b)(1) of the Texas Civil Practices and Remedies Code precludes preemption of Plaintiffs' claims for tortious interference with contract.

Plaintiffs' claims for tortious interference with contract are premised on allegations that Defendants intentionally interfered with confidentiality agreements UPS had with its employees "by using UPS's Confidential Information, Trade Secrets, or property to unlawfully compete with [them]."[31]  Proof of Plaintiffs' claims for tortious interference with contract would also prove misappropriation of a trade secret.  These claims are therefore preempted.  See Trinseo, 165 F.4th at 422 ("TUTSA 'preempts claims that rely on the same facts as a trade-secret-misappropriation claim'").  See also Coe, 718 S.W.3d at 353 ("if proof of some other theory of liability would also prove misappropriation of a trade secret, then the claim is preempted").

4.   Plaintiffs' Claims for Civil Conspiracy are Preempted

Citing ¶ 153 of Plaintiffs' Third Amended Complaint, Defendants argue that Plaintiffs' claims for civil conspiracy asserted against all the defendants are preempted because they are

---

[31]Plaintiff's Third Amended Complaint, Docket Entry No. 180, p. 33 ¶ 122.

expressly based on an alleged conspiracy to "steal and misappropriate UPS's [c]onfidential [i]nformation and [t]rade [s]ecrets."[32] Paragraph 153 of Plaintiffs' Third Amended Complaint alleges that all "Defendants, in combination with one another, conspired to intentionally and unlawfully steal and misappropriate UPS's Confidential Information and Trade Secrets."[33] Since Defendants filed their Memorandum of Law for Jury Trial, the parties have entered an agreed stipulation regarding the conversion claims asserted against Defendants Adams, Barry, Keenan, Meier, Monroe, Wester, and PMC,[34] and the court has entered an Order dismissing those claims.[35]

Civil conspiracy is a theory of derivative liability. Agar Corp., Inc. v. Electro Circuits International, LLC, 580 S.W.3d 136, 140-42 (Tex. 2019). Therefore, proof of an underlying tort is required to show a civil conspiracy. Id. See also Tilton v. Marshall, 925 S.W.2d 672, 681 (Tex. 1996). Acknowledging that "[u]nder Texas law, 'a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff

---

[32]Defendants' Memorandum of Law for Jury Trial, Docket Entry No. 301, p. 21. See also Defendants' Reply Brief Regarding TUTSA Preemption, Docket Entry No. 316, pp. 8-9.

[33]Plaintiff's Third Amended Complaint, Docket Entry No. 180, p. 38 ¶ 153.

[34]See Joint Rule 41(a)(1)(A)(ii) Stipulation of Partial Dismissal of Claims, Docket Entry No. 312, p. 2.

[35]See Partial Order of Dismissal of Certain Claims, Docket Entry No. 314, p. 2.

seeks to hold <u>at least one of the named defendants</u> liable,'"[36] Plaintiffs state that "consistent with that requirement, [they] seek to submit a conspiracy claim to the jury against only defendants Turnaround Services, LLC, Clark, and Swindoll."[37] Plaintiffs also state that

> [t]he conspiracy claim rests on the independent underlying torts of breach of fiduciary [duty] by the former UPS employees.  . . . [T]hese torts do not depend on the existence of a trade secret and therefore support a non-pre-empted conspiracy claim, or the alternative derivative claim of knowing participation in a breach of fiduciary duty, and therefore the conspiracy claim against Clark, Swindoll, and Turnaround Services, LLC is not preempted by another cause of action.[38]

Although Plaintiffs argue that their civil conspiracy claims rest on the underlying torts of breach of fiduciary duty or participation in breach of fiduciary duty, the civil conspiracy allegations in Plaintiffs' Third Amended Complaint do not mention breach of fiduciary duty or participation in breach of fiduciary duty, but instead, expressly allege that "Defendants . . . conspired to intentionally and unlawfully steal and misappropriate UPS's Confidential Information and Trade Secrets."[39]  Plaintiffs' civil conspiracy claims are preempted because as alleged they rely

---

[36]Plaintiffs' Response to Preemption Arguments, Docket Entry No. 310, p. 11.

[37]<u>Id.</u>

[38]<u>Id.</u> at 11-12.

[39]Plaintiff's Third Amended Complaint, Docket Entry No. 180, p. 38 ¶ 153.

on the same facts as Plaintiff's trade-secret misappropriation claims. Trinseo, 165 F.4th at 422 ("TUTSA preempts claims that rely on the same facts as a trade-secret-misappropriation claim"). See also Coe, 718 S.W.3d at 353 ("[I]f proof of some other theory of liability would also prove misappropriation of a trade secret, then the claim is preempted.").

### III. Plaintiffs' Motion for Clarification

On February 11, 2026, the court held a hearing at which it ruled, inter alia, that "Plaintiff will not be allowed to present evidence on Head Start Advantage damages," and that Plaintiffs' expert witness, "Bratic[,] will have thirty (30) days to supplement his report on the following three damages theories: lost profits, disgorgement, and avoided development costs."[40] Asserting that as worded, the minute entry order "appears to prohibit Plaintiffs from presenting any evidence on head start advantage damages at trial,"[41] and that they "should be given the opportunity to present their head start advantage theory through fact witnesses,"[42] Plaintiffs move the court to "vacate the portion of Docket Entry No. 304 excluding head start advantage damages evidence and permit [them]

---

[40]Hearing Minutes and Order, Docket Entry No. 304, p. 1.

[41]Plaintiffs' Motion for Clarification, Docket Entry No. 307, p. 5.

[42]Id. at 6.

to present such evidence at trial."[43]    Plaintiffs explain that

> Magistrate Judge Bray issued a Memorandum and Recommendation ("M&R") (Docket Entry No. 284) in which he held only that Plaintiffs' expert, Walter Bratic, could not offer a head start advantage theory of damages as part of his expected testimony at trial, which the Court adopted. (Docket Entry No. 289.)  Plaintiffs objected to this portion of the M&R and continue to object to Bratic's testimony being so limited, as the Court's ruling deprives Plaintiffs of a core, legally recognized remedy for their unjust enrichment claims under both state and federal trade secret law.

> However, even without Mr. Bratic, Plaintiffs' lay witnesses — specifically the executives who helped build UPS — can and should be permitted to testify about the time and effort that went into creating the company, time and effort the Defendants  avoided  through their misdeeds.  In other words, at a minimum, Plaintiffs should be given the opportunity to present their head start advantage theory through fact witnesses.[44]

Defendants respond that

> UPS's Motion for "Clarification" . . . is really asking the Court to do two things.  First, UPS wants the Court to change its ruling excluding Bratic's opinion on "head start advantage."  This issue was already extensively briefed, and UPS identifies no new reason for the Court to change its ruling. . .

> Second, UPS is asking the Court for an advance advisory ruling on whether four of its executives can testify to "lay witness" opinions on Precision's purported "head start advantage."  This request should be rejected as premature; the Court can rule during trial

---

[43]Id.    See also Id. at 17 ("Plaintiffs respectfully request that the Court grant this Motion for Clarification, vacate the portion of the February 11, 2026, Minute Entry Order (Docket Entry No. 304) excluding head start advantage damages evidence, and enter an order permitting Plaintiffs to present such evidence at trial.").

[44]Id. at 5-6.

when Defendants object. . .[45]

Plaintiffs reply that although they believe Bratic's opinions are sound and based on facts and data, they are not asking the court to reconsider prior rulings barring his testimony on head start advantage damages.  Asserting that a jury may synthesize a rational head start damages model from lay testimony, Plaintiffs seek an order pursuant to Federal Rule of Evidence 701 allowing their executives to offer lay testimony on development timelines concerning their own company's operations.[46]

The Court's February 11, 2026, ruling that "Plaintiff[s] will not be allowed to present evidence on Head Start Advantage damages," related only to the testimony of expert witness, Bratic. Therefore, the court will vacate the second paragraph on the first page of the February 11, 2026, Hearing Minutes and Order, and amend that Order to state that Plaintiff will not be allowed to present expert testimony from Mr. Bratic on Head Start Advantage Damages. However, because the court's practice is to rule on the admissibility of witness testimony during trial, and because Defendants cogently argue that the opinions of Plaintiffs' executives are not lay witness opinions but, instead, expert

---

[45]Defendants' Response to Plaintiffs' Motion for Clarification, Docket Entry No. 315, p. 1.

[46]Plaintiffs' Reply in Support of Motion for Clarification, Docket Entry No. 317, pp. 3-6.

opinions,[47] Plaintiffs' request for an order permitting them to elicit testimony at trial from their executives on head start advantage damages will be denied without prejudice.   Before Plaintiffs' executives will be allowed to testify at trial on head start advantage damages, Plaintiffs must satisfy the court that their testimony is admissible under Federal Rule of Evidence 701.

## IV. <u>Conclusions and Order</u>

For the reasons stated in § II.B.1, above, Plaintiffs' claims for breach of fiduciary duty premised on alleged misappropriation of confidential information asserted against defendants Adams, Barry, Keenan, Meier, Monroe, and Wester, are **PREEMPTED.**

For the reasons stated in § II.B.2, above, Plaintiffs' claims for knowing participation in breach of fiduciary duty based on alleged disclosure of confidential information asserted against defendants ALS, Precision, PMC, and Tiger, are **PREEMPTED.**

For the reasons stated in § II.B.3, above, Plaintiffs' claims for tortious interference with contract asserted against defendants ALS, Precision, PMC, and Tiger, are **PREEMPTED.**

For the reasons stated in § II.B.4, above, Plaintiffs' claims for civil conspiracy asserted against Clark, Swindoll, Precision, ALS, Tiger, and Turnaround Services are **PREEMPTED.**

---

[47]Defendants' Response to Plaintiffs' Motion for Clarification, Docket Entry No. 315, pp. 3-7.

For the reasons stated in § III, above, the second paragraph on the first page of the February 11, 2026, Hearing Minutes and Order, Docket Entry No. 304, is **VACATED** and that order is **AMENDED** to state that **Plaintiffs will not be allowed to present expert testimony from Mr. Bratic on the theory of Head Start Advantage Damages.** Plaintiffs' request for an order permitting them to elicit testimony at trial from their executives on head start advantage damages is **DENIED WITHOUT PREJUDICE.** Plaintiffs' Motion for Clarification of the Court's February 11, 2026 Minute Entry Order Excluding Head Start Advantage Damages Evidence, Docket Entry No. 307, is therefore **GRANTED in PART and DENIED in PART.**

Since the court held Docket Call on February 11, 2026, the causes of action in this case have been greatly narrowed. Although the causes of action in this case have been narrowed, the court has already set a number of cases for trial and will not be able to try this case before late fall at the earliest. Moreover, Plaintiffs seek various forms of relief that cannot be awarded in a jury trial. Therefore, the court will refer this case to the Honorable Nancy F. Atlas (ret.) for mediation. If Judge Atlas declares an impasse, the court will enter an order setting a new date for Docket Call. Because Judge Atlas will not be able to mediate this case before late July, the parties are **ORDERED** to submit by the close of business on Friday, June 26, 2026, an Amended Joint Pretrial Order with Proposed Jury Instructions and Questions revised to reflect the court's rulings and narrowing of the disagreements on the remaining issues.

24

As this case involves a number of claims asserted against a number of parties, the court has prepared a summary chart showing each claim, the parties against whom each claim has been asserted, and whether each claim has been resolved or remains live. The summary chart is attached to the end of this Memorandum Opinion and Order.

**SIGNED** at Houston, Texas, on this 27th day of May, 2026.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

25

**UPS'S CLAIMS**
**(Plaintiff's Third Amended Complaint, Docket Entry No. 180, filed on November 3, 2023)**

| Causes of Action / Defendants | Greg Adams | Melinda Barry | Kelly Lynn Clark | Marcus Keenan | David Meier | Eric Monroe | Carl Alan Swindoll | Jeff Wester | ALS Assoc. | Precision Invst. Group | Precision Mach. Conts. | Tiger Mngmt. Group | Turnaround Services |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 **Permanent Injunction** | Live | Live | Live | Live | Live | Live | Live | Live | Live | Live | Live | Live | Live |
| 2 **Breach of Contract** | Live | Live | | Live | Live | Live | | Live | | | | | |
| 3 **Breach of Fiduciary Duty** | | | | | | | | | | | | | |
| Misappropriation of Trade Secrets | D/A | D/A | | D/A | D/A | D/A | | D/A | | | | | |
| Misappropriation of Conf. Info. | Pre-E | Pre-E | | Pre-E | Pre-E | Pre-E | | Pre-E | | | | | |
| Misappropriation of Property | Live | Live | | Live | Live | Live | | Live | | | | | |
| Diverting of Customers | | | | Live | Live | | | | | | | | |
| Failure to Perform Work Obligations | | | | | Live | | | | | | | | |
| Beginning Employment with PMC Prior to Leaving UPS | Live | Live | | | | Live | | Live | | | | | |
| 4 **Knowing Participation in Breach of Fiduciary Duty** | | | | | | | | | | | | | |
| Disclosing Confidential Information | | | | | | | | | Pre-E | Pre-E | Pre-E | Pre-E | |
| Diverting Customers | | | | | | | | | Live | Live | Live | Live | |
| Beginning Employment with PMC Prior to Leaving UPS | | | | | | | | | Live | Live | Live | Live | |
| 5 **Tortious Interference w/ Contract** | | | | | | | | | Pre-E | Pre-E | Pre-E | Pre-E | |
| 6 **Actual and Threatened Misappropriation of Trade Secrets -Defend Trade Secrets Act** | Live | Live | | Live | Live | Live | | Live | | | Live | | |
| 7 **Actual and Threatened Misappropriation of Trade Secrets - TUTSA** | Live | Live | | Live | Live | Live | | Live | | | Live | | |
| 8 **Conversion** | D/A | D/A | | D/A | D/A | D/A | | D/A | | | D/A | | |
| 9 **Texas Theft Liability Act** | Live | Live | | Live | Live | Live | | Live | | | Live | | |
| 10 **Civil Conspiracy** | D/A | D/A | Pre-E | D/A | D/A | D/A | Pre-E | D/A | Pre-E | Pre-E | D/A | Pre-E | Pre-E |

Abbreviations:

D/A—Dismissed by Agreement, Docket Entry Nos. 312 and 314;   Pre-E—Preempted by TUTSA, May 27, 2026, Memorandum Opinion and Order